**FILED**

**AUG 24 2005**

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
BENTON DIVISION

| | |
|---|---|
| HARLEY-DAVIDSON MOTOR COMPANY GROUP, INC. and H-D MICHIGAN, INC., <br><br> Plaintiffs, <br><br> v. <br><br> BRETT RAY, individually and dba Hog-Air, and R&R RACING, INC. dba Hog-Air, <br><br> Defendants. | Civil Action No. 05-4156-JLF <br><br><br><br><br><br> COMPLAINT |

## COMPLAINT

Plaintiffs Harley-Davidson Motor Company Group, Inc. and H-D Michigan, Inc. (collectively, "Harley-Davidson" or "Plaintiffs," which references shall also include Plaintiffs' predecessors in interest), state their complaint against Defendants Brett Ray and R&R Racing, Inc. (collectively "Hog-Air" or "Defendants") as follows:

### Nature Of The Action

1. This is an action for trademark infringement, unfair competition, and deceptive trade practices, arising under the Federal Trademark Act of 1946, 15 U.S.C. §§ 1051 et. seq. ("Lanham Act"); the trademark infringement laws of the State of Illinois, the fair business practices and unfair and deceptive trade practices act of the State of Illinois, and the common law.

1

2. For over 100 years, Plaintiffs have sold motorcycles, and related parts and accessories, using both HARLEY-DAVIDSON and HARLEY as identifiers of their products and services. In addition, for decades, Plaintiffs have used trademarks and service marks comprised in whole or in part of the term HOG or H.O.G. ("HOG Marks") in connection with goods and services related to motorcycles. All of these marks are instantly recognized by the public as associated with the genuine, high quality products made by Harley-Davidson.

3. Over their 100-year history, Plaintiffs have sold millions of Harley-Davidson® motorcycles and have spent millions of dollars on advertising and other promotional materials that prominently display HARLEY-DAVIDSON, HARLEY, and/or the HOG Marks (collectively, "the HARLEY-DAVIDSON Marks"). As a result, the HARLEY-DAVIDSON Marks now serve as unique identifiers of Harley-Davidson and powerful symbols representing the innovation, ruggedness, high performance, and adventure offered by Harley-Davidson® motorcycles.

4. Notwithstanding the fame and distinctiveness of the HARLEY-DAVIDSON Marks, Defendants have knowingly appropriated Plaintiffs' marks and have sold and continue to offer to sell alternative aircraft engine packages and related goods, trading on the HARLEY-DAVIDSON Marks. Plaintiffs have attempted to resolve this matter with Defendants, but for months, Defendants have engaged in tactics of delay and have refused to make the changes necessary to assure that the public is not deceived. If Defendants are

allowed to continue to mimic Plaintiffs' famous marks, their conduct is certain to mislead and deceive consumers. Plaintiffs are thus compelled to bring this action in order to assure that the public is not confused as to the source or qualities of Defendants' goods.

## Jurisdiction And Venue

5. This Court has original jurisdiction over the subject matter of this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1332(a) and 1338. This Court has supplemental jurisdiction over Plaintiffs' related state and common law claims pursuant to 28 U. S. C. §§ 1338 and 1367 and the principles of pendent jurisdiction.

6. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendants reside in this District and a substantial part of the acts complained of occurred and are occurring in this District and in interstate commerce.

## Parties

7. Plaintiff Harley-Davidson Motor Company Group, Inc. is a corporation organized and existing under the laws of the State of Wisconsin, which has its principal place of business at 3700 West Juneau Avenue, Milwaukee, Wisconsin, 53208. Harley-Davidson Motor Company Group, Inc. is a subsidiary of Plaintiff H-D Michigan, Inc. and its licensee, authorized to use the HARLEY-DAVIDSON Marks.

8. Plaintiff H-D Michigan, Inc., an intellectual property holding company that owns the HARLEY-DAVIDSON Marks, is the parent of Harley-Davidson Motor Company Group, Inc. and has licensed Harley-Davidson Motor Company Group, Inc. to use the marks

in connection with its goods. H-D Michigan is a Michigan corporation with its principal place of business located at 315 W. Huron Street, Ann Arbor, Michigan, 48103.

9. On information and belief, Defendant Ray is an individual who resides in this District, who is a principal of Hog-Air and who personally participated in and directed the acts that form the basis of this Complaint. Defendant may be served at 15942 Mine #25 Road, West Frankfort, Illinois, 62896.

10. On information and belief, Defendant R&R Racing, Inc. ("R&R") is a corporation controlled by Defendant Ray with its principal place of business located in this District at 15942 Mine #25 Rd., West Frankfort, Illinois, 62896.

11. On information and belief, Defendant Ray and/or Defendant R&R are doing business as "Hog-Air."

### Harley-Davidson® Products And The HARLEY-DAVIDSON Marks

12. Harley-Davidson, the only major U.S. based motorcycle manufacturer and one of the world's leading manufacturers of motorcycles, is the owner of the famous HARLEY-DAVIDSON Marks, having manufactured and sold motorcycles bearing the HARLEY-DAVIDSON brand since 1903.

13. Plaintiffs own numerous federal trademark registrations for HARLEY-DAVIDSON and HARLEY, including the following:

| Mark | Reg. No. | Issue Date | Summary of Goods/Services |
|---|---|---|---|
| HARLEY | 1,352,679 | August 6, 1985 | motorcycles |

4

| HARLEY | 1,406,876 | August 26, 1986 | certain clothing |
|---|---|---|---|
| HARLEY | 1,683,455 | April 14, 1992 | certain clothing |
| HARLEY | 1,708,362 | August 18, 1992 | embroidered patches |
| HARLEY-DAVIDSON | 508,160 | April 5, 1949 | certain motorcycle parts |
| HARLEY-DAVIDSON | 507,163 | March 1, 1949 | certain motorcycle clothing |
| HARLEY-DAVIDSON | 519,875 | January 17, 1950 | enamels, polish, and cleaners for motorcycles |
| HARLEY-DAVIDSON | 539,805 | March 27, 1951 | certain tools for motorcycle repairs |
| HARLEY-DAVIDSON | 1,078,871 | December 6, 1977 | vehicles, namely motorcycles |
| HARLEY-DAVIDSON | 1,219,955 | December 14, 1982 | parts and service manuals for motorcycles, posters, and decals, among other things |
| HARLEY-DAVIDSON | 1,603,741 | June 26, 1990 | among other things, catalogues dealing with motorcycles and motorcycle parts and accessories |
| HARLEY-DAVIDSON | 1,255,091 | October 25, 1983 | a wide variety of motorcycle parts |
| HARLEY-DAVIDSON | 1,234,404 | April 12, 1983 | certain clothing, including T-shirts |
| HARLEY-DAVIDSON | 1,450,348 | August 4, 1987 | a wide variety of clothing, accessories, and household goods |
| HARLEY-DAVIDSON | 1,594,879 | May 8, 1990 | a wide variety of motorcycle parts |

True and correct copies of records evidencing these registrations are attached hereto as

Collective Exhibit A.

Case 4:05-cv-04156-JLF-CJP   Document 1   Filed 08/24/05   Page 6 of 20   Page ID #6

14. Moreover, Plaintiffs own a number of federal trademark registrations for marks incorporating HOG as follows:

| Mark | Reg. No. | Issue Date | Summary of Goods/Services |
| --- | --- | --- | --- |
| H.O.G. | 1,458,778 | September 22, 1987 | motorcycle club services |
| HOG HARLEY OWNERS GROUP and Design | 1,455,826 | September 1, 1987 | motorcycle club services |
| HOG and Design | 1,810,475 | December 14, 1993 | among other things, sport knives, mugs, and flags |
| HOG LADIES OF HARLEY and Design | 1,710,643 | August 25, 1992 | banners related to motorcycling, embroidered patches, and certain clothing |
| HARLEY HOG | 2,118,685 | December 9, 1997 | Sandwiches |
| HOG HARLEY OWNERS GROUP and Design | 2,305,867 | January 4, 2000 | jewelry |
| HOG TALES | 1,477,667 | February 23, 1988 | newsletter relating to motorcycling |
| HOG and Design | 1,534,200 | April 11, 1989 | wall plaques, certain clothing, embroidered patches, and certain accessories, among other things |
| HOG and Design | 1,483,313 | April 5, 1988 | certain motorcycle parts |
| HOG | 1,599,492 | June 5, 1990 | certain motorcycle parts |

6

ATLLIB01 2039774.2

| HOG | 1,716,992 | September 15, 1992 | a wide variety of products, including belt buckles, embroidered patches, food containers, sport knives, jewelry, cigarette lighters, clothing, magazines and banners relating to motorcycling, and metal badges |
| HOG HARLEY OWNERS GROUP and Design | 1,710,653 | August 25, 1992 | a wide variety of products, including belt buckles, embroidered patches, food containers, sport knives, cigarette lighters, clothing, magazines and banners relating to motorcycling |

True and correct copies of records evidencing these registrations are attached as collective Exhibit B.

15. All of the registrations listed above are valid and subsisting. They constitute in all instances prima facie evidence, and those registrations that are incontestable constitute conclusive evidence, of Harley-Davidson's exclusive rights to use each of the marks in connection with the products and services recited in the respective registrations.

16. In addition to the HARLEY, HARLEY-DAVIDSON, and HOG marks, Plaintiffs' authorized licensees and/or Plaintiffs have, since at least 1991, used a distinctive boar's head design that depicts a stylized boar's head in profile, with goggles over its eyes and flames shooting from the back of the head, denoting speed, as shown in Exhibit C (the "Design Mark" or the "Boar's Head Design"). Plaintiffs and their licenses have used the

7

Design Mark in connection with a wide variety of motorcycle-related goods and have applied to register the mark with the U.S. Patent and Trademark Office.

17. Harley-Davidson has spent tens of millions of dollars on advertising and other promotional materials that prominently display the HARLEY-DAVIDSON Marks and/or the Design Mark.

18. The HARLEY-DAVIDSON Marks and the Design Mark have, for many years, been used and continue to be used extensively in connection with motorcycles, and parts, accessories, and services therefor, as well as a wide variety of general merchandise and services. Harley-Davidson markets its motorcycles, motorcycle parts and accessories, and other products and services in the United States under the HARLEY-DAVIDSON Marks through a network of more than 600 authorized dealers located throughout the country.

19. Harley-Davidson's customers have tremendous loyalty to and passion about the brand. Hundreds of thousands of enthusiasts belong to the Harley Owners Group®, or, H.O.G.®, which organizes numerous events and promotes the brand throughout the country and around the world. HOG members organize, travel to and participate in thousands of events annually, including motorcycle rallies and events. Each year, these enthusiasts and other Harley-Davidson® motorcycle owners spend hundreds of millions of dollars purchasing accessories, equipment, and clothing that bear one or more of the HARLEY-DAVISON Marks.

20. As a result of Plaintiffs' extensive and continuous use and promotion of their marks throughout the United States and the sale of billions of dollars worth of Harley-Davidson products, the marks have become famous and instantly recognizable by consumers as symbolizing Harley-Davidson.

### Defendants' Unauthorized Use Of The HARLEY-DAVIDSON Marks

21. On information and belief, Defendants are engaged in selling alternative aircraft engines and motorcycle parts.

22. On information and belief, Defendants purchase certain Harley-Davidson® brand motorcycle engines, modify them, and incorporate them into engine packages that include parts not manufactured by Harley-Davidson, including an engine mount, exhaust stacks, ignition with coils, rectifier, battery box, oil tank, and complete reduction drive system with a starter. Defendants market and sell these engine packages for installation on light-weight or experimental aircraft.

23. Defendants sell their aircraft engine packages under the name and mark HOG-AIR and prominently feature the HARLEY-DAVIDSON marks in the promotion and marketing of their aircraft engine packages. Defendants also use a boar's head design in the marketing of their products, as shown in Exhibit D. This design depicts a stylized profile of a boar's head with the boar wearing goggles and having flamelike images shooting from the back of its head, like the Design Mark long used by Plaintiffs and well-known to the public as associated with Plaintiffs.

ATLLIB01 2039774.2

24.  Defendants promote their aircraft engine packages on a website located at <hog-air.com>, the introduction and homepages for which are attached as Exhibit E. According to Defendants' websites, Defendants sell these engines at their business located at 15942 Mine #25 Rd., West Frankfort, Illinois, where Defendants also sell parts for motorcycles, including subframes, stands, and other parts.

25.  Defendants adopted the HOG-AIR business name, registered the HOG-AIR.COM domain name, and began using them in connection with their business in or about 2002, long after Plaintiffs' Marks had become famous. Defendants' site initially prominently featured Plaintiffs' design mark consisting of a distinctive bar and shield and the words HARLEY-DAVIDSON MOTORCYCLES, a registration for which is shown in Exhibit F (the "Bar & Shield Design). Later, Defendants added in large letters on the opening page "HOG AIR Harley Davidson Powered Aircraft," as shown in Exhibit G.

26.  Upon learning of Defendants' infringement, Plaintiffs contacted Defendants and requested that Defendants cease and desist from infringing upon their marks. In response, Defendants removed the Bar & Shield Design, made certain other changes to their website, and added a disclaimer.

27.  However, sometime thereafter, Defendants began including more references to Plaintiffs and Plaintiffs' Marks on their website, by adding:

a)  the phrase "Powered by Genuine Harley-Davidson® engines" in the site's introduction sequence, with the words "Harley-Davidson" in large orange print;

10

b) the offering of T-shirts bearing the boar's head logo and the words "HOG-AIR HARLEY DAVIDSON engines";

c) a photo of an airplane on the "Pictures" web page showing "Hog-Air" in large letters just above and behind the aircraft engine, with "Harley-Davidson" under it, creating the overall impression that the brand name of the aircraft was "Hog-Air Harley-Davidson";

d) the question "How good is the new Harley-Davidson™ engine?" with "Harley-Davidson" in orange letters substantially larger than the remaining words in black;

e) multiple HOG references, such as "The HOG is flying"; "The HOG is flying small video"; "HOG over head"; and "High on the HOG";

f) the statements "The engines we use are the new Harley-Davidson® twin cam balanced 88ci." and "Our new Harley-Davidson® twin cam 95ci and 88ci engines are ready to ship";

g) identifications of their business as "Home of the aircraft powered by Hog-Air Harley-Davidson engine conversions" and "Home of the only Light Sport Aircraft powered by Hog-Air Harley-Davidson™ engine conversions";

h) an identification of their product as a "complete Hog-Air Harley-Davidson engine conversion";

i) webpage headings that repeatedly incorporate "Harley-Davidson"; and

11

j) a reference on the "dealer page" to "Hog-Air Harley-Davidson engine conversion for your aircraft."

28. Upon learning of the additional uses of their marks, Plaintiffs again contacted Defendants in an attempt to correct Defendants' infringement without the need for court intervention. For months, Plaintiffs have tried in good faith to resolve the issue with Defendants, but Plaintiffs' efforts have been repeatedly met by Defendants' delaying tactics.

29. In recent months, Plaintiffs have learned of Defendants' additional infringement, in that Defendants are also improperly using Plaintiffs' HARLEY mark on their r-r-racing.com website in connection with their sale of motorcycle parts. Defendants' homepage displays "HARLEY" as one of the choices for a website visitor to click, as shown in Exhibit H. When one clicks on that link, the page that appears has no Harley-Davidson® brand products, but promotes "Harley style soft tail & swingarms" and invites users to "Click here" in order "To see our new Harley parts." When one does click that link, the page that appears offers parts manufactured by R&R, not Harley-Davidson® brand parts.

30. Defendants' uses of Plaintiffs' marks are intended to and in fact do evoke Plaintiffs' HARLEY-DAVIDSON brand and trade on the goodwill of the HARLEY-DAVIDSON Marks. The obvious similarity between the HARLEY-DAVIDSON Marks and Defendants' infringing marks is likely to confuse the public and to cause irreparable harm to the goodwill symbolized by Plaintiffs' Marks.

31. Defendants have willfully ignored Plaintiffs' exclusive rights and intentionally sought to trade on Plaintiffs' Marks' goodwill and communicative power. Indeed, Defendants have succeeded in their attempt, in that they have already caused actual consumer confusion. If not stopped, Defendants actions are likely to cause even more confusion. Having already intentionally infringed on Plaintiffs' Marks, Defendants must take greater steps to correct and prevent further confusion than innocent users of Plaintiffs' Marks might need to take.

## FIRST CAUSE OF ACTION
(Infringement of Registered Trademarks Under Section 32 of the Federal Lanham Act - 15 U.S.C. §§ 1114)

32. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

33. Defendants' use of Plaintiffs' registered marks and of marks that are confusingly similar to Plaintiffs' registered marks is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship of Defendants' goods and services.

34. Defendants' unauthorized use of the Plaintiffs' Marks has caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks, in an amount that cannot be presently ascertained, leaving Plaintiffs with no adequate remedy at law. Plaintiffs therefore are entitled to injunctive relief under 15 U.S.C. § 1114.

35.  Defendants' actions demonstrate a willful intent to trade on the reputation and goodwill associated with Plaintiffs' Marks, including the federally-registered versions, thereby entitling Plaintiffs to recover Defendants' profits, treble damages, costs, and reasonable attorneys' fees under 15 U.S. C. §§ 1114, 1116 and 1117.

## SECOND CAUSE OF ACTION
(False Designation of Origin Under Section 43(a) of the Federal Lanham Act - 15 U.S.C. § 1125(a))

36.  Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

37.  Defendants' use of Plaintiffs' Marks and marks that are confusingly similar to Plaintiffs' Marks, as described above, is a false designation of origin and is likely to cause confusion and mistake and to deceive potential consumers and the public as to the source, origin or sponsorship of Defendants' goods and services.

38.  Defendants' unauthorized use of Plaintiffs' Marks and confusingly similar imitations has caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks, in an amount that cannot be presently ascertained, leaving Plaintiffs with no adequate remedy at law. Plaintiffs therefore are entitled to injunctive relief under 15 U.S.C. § 1125(a).

39.  Defendants' actions demonstrate a willful intent to trade on the reputation and goodwill associated with the Plaintiffs' Marks, thereby entitling Plaintiffs to recover

14

Defendants' profits, treble damages, costs, and reasonable attorneys' fees pursuant to 15 U.S.C. §§ 1125(a), 1116 and 1117.

### THIRD CAUSE OF ACTION
(False Advertising Under Section 43(a) of the Federal Lanham Act – 15 U.S.C. § 1125(a))

40.     Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

41.     By promoting its engine packages as Harley-Davidson® engines, when in fact, Defendants have modified the Harley-Davidson® engine component and have incorporated it into a system with a number of other components not manufactured by Harley-Davidson, Defendants have made false statements and misrepresentations of fact in connection with the promotion or offering for sale of Defendants' goods.

42.     Defendants' false statements misrepresent the nature and qualities of Defendants' goods.

43.     Defendants' false statements and misrepresentations actually deceive or tend to deceive a substantial portion of the purchasers of Plaintiffs' and Defendants' products.

44.     Defendants' false statements and misrepresentations are material in that they will likely influence the deceived purchasers' purchasing decisions.

45.     Defendants have acted intentionally, willfully, and in bad faith.

46.     Defendants' false statements and misrepresentations are causing, and are likely to cause, substantial injury to the public and to Plaintiffs. Plaintiffs have no adequate remedy at law and are entitled to injunctive relief and to recover Defendants' profits and Plaintiffs'

15

actual and trebled damages, costs, and reasonable attorney fees under 15 U.S.C. §§ 1125, 1116, and 1117.

## FOURTH CAUSE OF ACTION
(State Statutory and Common Law Trademark Infringement)

47.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

48.   Defendants' use of Plaintiffs' Marks and marks confusingly similar to Plaintiffs' Marks as described above constitutes trademark infringement actionable under the law of the State of Illinois.

49.   Defendants' acts of trademark infringement have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks, in an amount that cannot be presently ascertained.  Plaintiffs are therefore entitled to injunctive relief under 765 ILCS § 1036/65. Because of Defendants' willful and intentional conduct, Plaintiffs are also entitled to monetary relief.

## FIFTH CAUSE OF ACTION
(Unfair Competition Under State Law)

50.   Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

16

51. Defendants' use of Plaintiffs' Marks and marks confusingly similar to Plaintiffs' Marks as described above constitutes passing off, infringement and misappropriation, actionable under the law of the State of Illinois.

52. Defendants' acts of unfair competition have caused and, unless restrained, will continue to cause great and irreparable injury to Plaintiffs, and to the business and goodwill represented by Plaintiffs' Marks, in an amount that cannot be presently ascertained. Plaintiffs are therefore entitled to injunctive and monetary relief.

## SIXTH CAUSE OF ACTION
(Deceptive Acts and Practices Under State Statute)

53. Plaintiffs repeat and incorporate by reference the allegations in paragraphs 1-31.

54. Defendants' use of Plaintiffs' Marks and marks confusingly similar to Plaintiffs' Marks is likely to confuse the public and cause substantial injury to the public and Plaintiffs. By these actions, Defendants have engaged and are continuing to engage in unfair and deceptive acts or practices actionable under the deceptive trade practices statute of the State of Illinois, 815 ILCS 505/1 et seq. Defendants have caused actual damage to Plaintiffs. Plaintiffs are therefore entitled to recover their damages, costs and reasonable attorneys' fees.

WHEREFORE, Plaintiffs pray that:

1. Defendants and all agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from

ATLLIB01 2039774.2

Defendants, or in concert or participation with Defendants, and each of them, be enjoined permanently, from:

    a. using the HARLEY, HARLEY-DAVIDSON, Bar & Shield Design, HOG Marks, and Boar's Head Design or any other copy, reproduction, or colorable imitation or simulation of Plaintiffs' Marks on or in connection with Defendants' goods or services;

    b. using HOG-AIR as a name, mark, or domain name;

    c. using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is a copy, reproduction, colorable imitation, or simulation of or confusingly similar to the trademarks, service marks, names, or logos of Plaintiffs;

    d. using any trademark, service mark, name, logo, design or source designation of any kind on or in connection with Defendants' goods or services that is likely to cause confusion, mistake, deception, or public misunderstanding that such goods or services are produced or provided by Plaintiffs, or are sponsored or authorized by or in any way connected or related to Plaintiffs;

18

      e.      engaging in false advertising using Plaintiffs' Marks or falsely representing the nature, qualities or characteristics of Defendants' services or goods; and

      f.      passing off, palming off, or assisting in passing off or palming off, Defendants' goods or services as those of Plaintiffs, or otherwise continuing any and all acts of unfair competition as alleged in this Complaint;

2. Defendants be ordered to transfer the domain name hog-air.com to Plaintiffs;

3. Defendants be ordered to destroy all signage, products in inventory, all marketing material, films, screens, tapes, molds, dies, and computer media containing or used in the reproduction of the Plaintiffs' Marks or any confusingly similar imitations thereof and to provide a certification to Plaintiffs and the Court of such destruction;

4. Defendants be compelled to account and disgorge to Plaintiffs any and all profits derived by Defendants as a result of Defendants' acts forming the basis of this Complaint.

5. Plaintiffs be compensated for all damages caused to Plaintiffs by the acts forming the basis of this Complaint;

6. Based on Defendants' intentional use of marks known to infringe, Plaintiffs' damages award be trebled and the award of Defendants' profits be enhanced as provided for by 15 U.S.C. § 1117(a);

ATLLIB01 2039774.2

7.      Defendants be required to pay to Plaintiffs the costs of this action and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a);

8.      Based on Defendants' willful and deliberate conduct, and to deter such conduct, Plaintiffs be awarded punitive damages under state law; and

9.      Plaintiffs have such other and further relief as the Court may deem just.

Dated: August ___, 2005.

                                        Respectfully Submitted,

                                        /s/ Thomas L. Orris
                                        Thomas L. Orris
                                        WILLIAMS, VENKER & SANDERS LLC
                                        10 South Broadway, Suite 1600
                                        St. Louis, Missouri 63102
                                        Telephone: (314) 345-5000
                                        Fax: (314) 345-5055
                                        torris@wvslaw.com

                                        Of Counsel:

                                        Jerre B. Swann, Esq.
                                        Judith A. Powell, Esq.
                                        William M. Bryner, Esq.
                                        KILPATRICK STOCKTON LLP
                                        1100 Peachtree Street, Suite 2800
                                        Atlanta, Georgia 30309
                                        Telephone: (404) 815-6500
                                        Facsimile: (404) 815-6555
                                        jpowell@kilpatrickstockton.com

                                        Attorneys for Plaintiffs
                                        Harley-Davidson Motor Company Group, Inc.
                                        and H-D Michigan, Inc.

ATLLIB01 2039774.2